1
2
3
4
5
6
7                          UNITED STATES DISTRICT COURT

8                        NORTHERN DISTRICT OF CALIFORNIA

9

10   GEORGE DAVIS, et al.,                    Case No.  15-cv-04336-RS

11                Plaintiffs,

12         v.                                 ORDER GRANTING PRELIMINARY
                                              RELIEF
13   CITY AND COUNTY OF SAN
     FRANCISCO, et al.,
14                Defendants.

15

16                                  **I. INTRODUCTION**

17         Plaintiffs George Davis and Oxane "Gypsy" Taube are self-described political activists for

18   "body freedom"—a cause that includes advocating for rights to public nudity.  Plaintiffs wish to

19   hold a public march on San Francisco city streets this coming Saturday to protest the enactment

20   and enforcement of a municipal ordinance regulating public nudity.  Believing their intended

21   march to come within the definition of a "parade" under another municipal ordinance, plaintiffs

22   applied for a parade permit pursuant to that ordinance.

23         Through his delegates, the San Francisco Chief of Police denied plaintiffs a parade permit,

24   explaining that in light of the fact only 100 or fewer participants were expected, the march could

25   be carried out on city sidewalks.  The Chief asserted the planned march therefore was not a

26   "parade" under the ordinance, and would not require a permit.

27         In this action, plaintiffs assert the ordinance governing parades is constitutionally infirm on

28   its face and/or as applied in a number of different respects.  Plaintiffs' pending motion for a

United States District Court
Northern District of California

1  restraining order that would compel the City to issue a parade permit, however, does not require

2  that many of those issues be reached at this juncture.  Even assuming the ordinance is

3  constitutionally sound, the Chief of Police simply failed to follow the ordinance when considering,

4  and ultimately denying, plaintiffs' application for a permit.  As that denial results in restrictions on

5  plaintiffs' free speech rights, it cannot stand, and preliminary relief must issue.

6

7  **II.  BACKGROUND**

8      This coming Saturday, September 26, 2015 is the date of an annual street festival held in

9  San Francisco known as the Folsom Street Fair.  The nature of the Fair is such that it attracts many

10  participants who may reasonably be assumed to have sympathies and interests in common with

11  those of plaintiffs and their "body freedom" cause.  Plaintiffs therefore saw the date as an

12  especially favorable opportunity to hold a protest march regarding San Francisco Police Code

13  §154, which regulates public nudity.[1]

14      Plaintiffs planned a route from Jane Warner Plaza in the Castro district, down Market

15  Street, into the Civic Center, past City Hall, and back up Market Street to the starting point.

16  Although plaintiffs anticipated that only 50-100 people were likely to participate in the march,

17  they wanted it to take place on the streets, and not be confined to the sidewalks.  Accordingly, on

18  July 20, 2015, plaintiff Davis submitted a "Parade Permit Application" on the police department

19  form designed for that purpose.  Davis described the event as a "'Nude-In' March," and its

20  purpose as a "Declaration of Body Freedom."  The permitting process for parades is governed by

21  Article 4 of the San Francisco Police Code, sections 366-379.

22      Nearly a month later, Davis received a response, signed by the commanding officer and the

23  "Permit officer" of the Mission Police Station, presumably acting on behalf of the Chief of Police,

24

25  ───────────────
[1] Plaintiffs previously brought another action in this court against the City of San Francisco

26  challenging the constitutionality of §154.  See, *Hightower et al v. City and County of San Francisco*, C12-5841 EMC.  A motion under Civil Local Rule 3-12 to relate this case to that one

27  has been denied.

28

United States District Court
Northern District of California

who is charged with approving parade applications under Article 4.  The response was entitled

"Permit Recommendation," and advised Davis, "[t]he event for which you are seeking a permit

would not be a parade and therefore does not require a permit."  The response explained that the

police department does not require permits for events "with such a small number of people."  It

further stated that, given the number of participants and the proposed route, "the event can take

place on the sidewalk."[2]

Article 4 provides that a parade permit applicant may appeal an adverse decision to the

"Committee on Parades" of the Board of Supervisors, "if such appeal can be timely made."

Plaintiffs' attempt to pursue such an appeal here was rejected as "not timely made," because the

Committee on Parades is not scheduled to meet until next month, after the event is supposed to

take place. This action followed.  Plaintiffs filed their complaint on September 22, 2015, and their

motion for a temporary restraining order the following day. Argument was heard on September

24, 2015, after the City filed written opposition on an expedited basis.

## III.  LEGAL STANDARD

An application for preliminary relief requires the plaintiff to "establish that he is likely to

succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

*Winter v. N.R.D.C., Inc.*, 555 U.S. 7, 21–22 (2008). The Ninth Circuit has clarified, however, that

courts in this Circuit should still evaluate the likelihood of success on a "sliding scale." *Alliance

for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011) ( "[T]he 'serious questions'

version of the sliding scale test for preliminary injunctions remains viable after the Supreme

Court's decision in *Winter*.'" ). As quoted in *Cottrell*, that test provides that, "[a] preliminary

[2] At one point, plaintiffs contended this response was tantamount to a failure to process the application, such that the application could be deemed approved under the provisions of the ordinance. In response, the police department asserted that the response was in fact a denial of the permit.  Plaintiffs do not challenge that conclusion, and advance no argument now that the permit should be deemed to have been approved.

United States District Court
Northern District of California

1   injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the

2   merits were raised and the balance of hardships tips sharply in the plaintiff's favor," provided, of

3   course, that "plaintiffs must also satisfy the other [*Winter*] factors" including the likelihood of

4   irreparable harm. *Id*. at 1135.

5                                          **IV. DISCUSSION**

6          With specified exceptions not relevant here, section 366 defines "parade" as "an event . . .

7   in which a group of persons proceed as a collective body for more than one block on any street in

8   the City and County of San Francisco, whether on foot or in any type of vehicle or on an animal or

9   animals, which event obstructs or interferes with the normal flow of vehicular traffic."  Section

10  369 provides that the Chief of Police "shall" approve a parade application unless he or she

11  determines that one or more of twelve conditions expressly set out in the ordinance exist.   Section

12  370 requires the Chief to provide in writing the reason or reasons for any denial of a permit

13  application.

14         Here, there is no dispute that the Chief did not refuse to issue the permit for any of the

15  twelve reasons set out in the ordinance as permissible grounds for an exercise of such discretion.

16  The parties are also in agreement that nothing in the text of the ordinance limits its applicability to

17  events involving any minimum number of people, beyond the definition that it must at least be a

18  "group of persons" who "proceed as a collective body."

19         The City nonetheless contends that the Chief was entitled to deny a permit based on his

20  interpretation of the ordinance as applying only where the "group" is of an undefined "sufficient

21  size," taking into account numerous variables.  In the event such a number is reached, the

22  gathering may then be treated as a "parade," which may be entitled to use the streets, if not

23  otherwise barred by one or more of the twelve listed grounds for denying a permit.  The City

24  candidly admits that it is the preference of the police that events be confined to the sidewalks,

25  when that is feasible.  As such, the City is unable to offer a precise minimum number of persons it

26  believes are necessary to form a "parade"—sidewalk width and other conditions vary depending

27  on location.  The City offers a declaration, however, asserting that "[t]he Police Department

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    typically finds that events involving up to a couple hundred participants can often be

2    accommodated on the sidewalks, while larger events cannot."

3         The denial of the permit plaintiffs are seeking does not, of course, preclude them from

4    carrying out a march along the route they intended, and from exercising free speech rights in doing

5    so.  The law is clear, though, that allowing a sidewalk march is not automatically a

6    constitutionally-acceptable substitute for permitting a street parade.  *See Seattle Affiliate of Oct.*

7    *22nd Coal. to Stop Police Brutality, Repression & Criminalization of a Generation v. City of*

8    *Seattle*, 550 F.3d 788, 795-96 (9th Cir. 2008) ("streets and sidewalks are distinct forums for

9    speech.")[3]  That said, it very well may be that a city would be entitled to require marchers to use

10   sidewalks instead of the streets as part of reasonable "time, place, and manner" restrictions on

11   expressive activity.  *See Long Beach Area Peace Network,* 522 F.3d at 1027 (approving ordinance

12   giving officials the discretion to "restrict[ ] events to city sidewalks, portions of a city street, or

13   other public right-of-way," but only when such restrictions are "necessary to . . . protect the safety

14   of persons and property and to control vehicular and pedestrian traffic" (internal quotation marks

15   omitted) (emphasis altered)).[4]  In cases like these, the critical issue often is whether the ordinance

16   at issue "delegates overly broad discretion to police officials." *Seattle Affiliate*, 550 F.3d at 798.

17        Here, the City is arguing, in effect, that the ordinance delegates to the Chief of Police

18   discretion to conclude that a particular proposed expressive march is too small to be entitled to use

19   of the streets, and thus can instead be relegated to the sidewalks.  The City is unable, however, to

20   point to *any* provisions in the text of the ordinance expressly assigning such discretion to the Chief

21

22   _____

[3]  Additionally, as plaintiffs point out, although assigning a group to either the streets or the
23   sidewalks based on its size might appear to be a "content neutral" distinction, there is at least an
     argument that the practical effect would sometimes be to discriminate against more unpopular
24   opinions.

25   [4]  To be valid, "time, place, and manner" restrictions "(1) must not delegate overly broad
     discretion to a government official; (2) must not be based on the content of the message; (3) must
26   be narrowly tailored to serve a significant governmental interest; and (4) must leave open ample
     alternatives for communication."  *Santa Monica Food Not Bombs v. City of Santa Monica*, 450
27   F.3d 1022, 1037 (9th Cir. 2006).

28

United States District Court
Northern District of California

1    or providing standards under which it is to be exercised.  The City suggests that the discretion

2    arises from a need to interpret the word "parade"—which it insists is commonly understood as

3    referring to a "large" number of people.  While the term may generally invoke images of an event

4    involving more than a mere handful of people, it is far from obvious that no reasonable person

5    would understand 50 to 100 people to be incapable of forming a parade. Furthermore, the

6    argument that the Police chief must or can interpret the term "parade" as including a numerical

7    minimum is undercut by the fact that there is an express definition in the ordinance that neither

8    contains nor implies such a minimum.

9           Moreover, even assuming the ordinance invested the Chief with discretion to relegate

10   marchers to the sidewalk based on the size of the event, it provides *no* standards by which that

11   discretion is to be exercised.  Relying on *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S.

12   123 (1992) and *City of Lakewood v. Plain Dealer Pub. C.*, 486 U.S. 750 (1988), the City insists

13   where such standards are not explicit in a law, they can be supplied by "well established practice."

14   Whatever application that principle may have in some circumstances, the record here does not

15   permit a conclusion that the police department has such a clearly articulated, specific, consistent,

16   and well-established policy that the lack of any guideposts in the ordinance could be overlooked.

17   *Compare Seattle Affiliate*, 550 F.3d at 799 ("We decline to elevate any of the various decisional

18   principles offered by Seattle's officials to the realm of 'well-established practice,' when no

19   consistent set of factors was ever articulated.")

20          At least at this juncture in the proceedings, the better analysis is not that the ordinance is

21   necessarily infirm constitutionally for conveying unbridled discretion to the police to require

22   marchers to confine themselves to the sidewalks, but that the Chief's denial of the permit cannot

23   stand because the ordinance does not authorize him to withhold approval on grounds that an

24   applicant's proposed event will have too few participants.[5]  That failure to comply with the

25   _____

26   [5]  More precisely, plaintiffs have made an adequate showing of a probability of success with
     respect to a claim that the ordinance did not vest the Chief with discretion to deny a permit on the
27   grounds he identified as the basis of his decision.  Because this is only a motion for preliminary
     relief, the factual and legal conclusions reached herein are not dispositive of the claims in the case.

28

ordinance rises to the level of a cognizable federal claim because it impacts plaintiffs' First Amendment rights.

The remaining question is the scope of the remedy.[6]  Plaintiffs request that the City be ordered to approve the permit, whereas the City suggests that the Police Chief be given the opportunity to consider the application anew, such that he could still deny it if other grounds for doing so under the ordinance exist.  Given the timing, allowing the Chief to assert now other objections that he previously elected not to advance, would have the deleterious effect of impinging on the very rights plaintiffs are seeking to protect.  Additionally, while it may not strictly have been incumbent on the City to do so, it has not articulated any reasons why a permit likely could or would be denied under any of the grounds set out in the ordinance.  Accordingly, the City will be ordered to issue the permit.

## V.  CONCLUSION

The City of San Francisco, through its Chief of Police or other such official as may be appropriate, shall forthwith approve the application for a parade permit submitted by plaintiff George Davis, a copy of which is attached as Exhibit A to the complaint in this action.  Within 10 days of the date of this order, the parties shall submit a joint statement setting out their views as to whether additional issues are potentially subject to preliminary injunctive relief or whether any remaining challenges to the validity of the ordinance plaintiffs intend to pursue may instead be addressed in the ordinary course of resolving the litigation on the merits.

---

Plaintiffs have also made an adequate showing of irreparable injury, given the nature of the rights they are seeking to protect, and the significance of the timing of their planned parade.  Likewise, plaintiffs have shown the equities tip in their favor and that the public interest is served by injunctive relief under these circumstances.

[6]  Plaintiffs' argument that a bond is not appropriate in these circumstances, unchallenged by the City, has merit, and no bond requirement will be imposed.

United States District Court
Northern District of California

**IT IS SO ORDERED**.

Dated: September 25, 2015

RICHARD SEEBORG
United States District Judge